UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ALISSA G.,[1]

                                   Plaintiff,        Case # 21-CV-305-FPG

v.                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
───────────────────────────────

## INTRODUCTION

Plaintiff Alissa G. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In September 2018, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 95. She alleged disability since September 1999 due to a learning disability. Tr. 96. In September 2020, Administrative Law Judge Stephan Bell ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 15-27. In January 2021, the Appeals Council denied Plaintiff's

───────────────────────────────

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

1

request for review.  Tr. 1-4.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September

2018, her application date. Tr. 17. At step two, the ALJ found that Plaintiff's learning disorder was a severe impairment. *Id.* At step three, the ALJ found that this impairment did not meet or medically equal any Listings impairment. Tr. 19.

Next, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels, except that she was limited to simple, routine, and repetitive tasks and simple work-related decisions. Tr. 22. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 26. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 26-27. The ALJ therefore found that Plaintiff was not disabled. Tr. 27.

## II. Analysis

Plaintiff argues that remand is warranted because the ALJ erroneously relied on his own lay opinion to craft the RFC. *See* ECF No. 8-1 at 8-14. The Court disagrees.

Plaintiff was born in May 1994. Tr. 288. She has long received educational assistance and support due to her learning disability. When she was in first grade, Plaintiff's Individualized Education Program ("IEP") indicated that Plaintiff was easily distracted, had difficulty understanding concepts and with short-term memory, and needed extra time and assistance in order to complete assignments. Tr. 289. She was able to participate in regular education "with supportive special education" and a "firm, structured" environment. *Id.* In seventh grade, Plaintiff's general intelligence, working memory, and thinking ability were assessed to be in the "low average range." Tr. 299. By ninth grade, Plaintiff was "mainstreamed" into a regular classroom in her "core subjects," but she still required a teacher assistant in order to "complete homework, study for tests, and stay organized." Tr. 302. Plaintiff required prompting "by the teacher to begin her work and to remind her of what work needs to be done." *Id.* She was able to

4

comprehend and understand "concrete information." Tr. 302-03. In tenth grade, Plaintiff received a psycho-educational evaluation, which indicated that Plaintiff "work[ed] well in class, put[] forth good effort," and had "no behavior concerns." Tr. 381. She still received additional educational supports. *Id.*

At the end of high school, Plaintiff's IEP shows that Plaintiff continued to have difficulties understanding and applying complicated concepts. Tr. 221. She needed extended time to process auditory information and brainstorm answers. Tr. 222. These more recent educational records nowhere suggest that Plaintiff had any difficulties processing and carrying out simple tasks and assignments, however. In 2013, Plaintiff graduated from high school. Tr. 425.

In November 2018, Plaintiff met with consultative examiner Susan Santarpia, Ph.D., for a psychiatric evaluation. On examination, Plaintiff showed coherent thought processes, mildly impaired attention and concentration "due to limited intellectual functioning," intact recent and remote memory skills, and "low-average to borderline" cognitive functioning. Tr. 366-67. Plaintiff reported being able to dress, bathe, cook, clean, shop, and take care of her other daily needs. Tr. 367. Dr. Santarpia identified no restrictions in Plaintiff's functional capacities and opined that Plaintiff's presentation was not "consistent with any psychiatric or cognitive problems that would significantly interfere with [Plaintiff's] ability to function on a daily basis." *Id.* Dr. Santarpia also conducted an intelligence evaluation. Tr. 370. Although Plaintiff's full-scale IQ fell "within the borderline range of ability," Dr. Santarpia opined that any cognitive weaknesses would not interfere with her functional abilities. *See* Tr. 370-71 ("Adaptive functioning within normal limits for communication, self-care, social community, self-direction, health and safety, home living, and leisure. Delay in academics."). This opinion is consistent with that of state

5

agency consultant S. Juriga, Ph.D., who opined that Plaintiff's mental health impairment was non-severe. Tr. 100.

In October 2019, Plaintiff began mental health treatment for anxiety and depression. She had bi-weekly therapy appointments with Cindy Griffing, a licensed mental health counselor. Tr. 521. In August 2020, Griffing completed a mental residual functional capacity questionnaire, in which she opined that Plaintiff suffered from depression and anxiety symptoms that "interfere with her social and occupational, and familial areas of her life." *Id.* Griffing indicated that Plaintiff was seriously limited in her ability to understand, remember, and carry out even very simple and short instructions; was entirely unable to maintain attention for two-hour segments; and could not sustain an ordinary routine without special supervision. Tr. 523. Griffing also stated that Plaintiff was limited in her abilities to interact appropriately with the general public, get along with co-workers, and maintain socially appropriate behavior. Tr. 523-24.

Two hearings were held on Plaintiff's application. Tr. 32, 51. Plaintiff testified that she has difficulty learning new things, and she estimated that it might require "a couple hours" to "learn something new." Tr. 44. She gets overwhelmed easily in new situations. Tr. 46. Her learning disability prevents her from working because she "get[s] easily distracted" and "feel[s] uncomfortable" in groups of people. Tr. 57. Plaintiff stated that she would be "overwhelmed" if she were required to maintain a work schedule. Tr. 64.

In his decision, the ALJ concluded that Plaintiff was moderately limited in her abilities to (a) understand, remember, and apply information, and (b) concentrate, persist, and maintain pace. Tr. 19-20. He noted that, while the record established that Plaintiff had academic difficulties, it did not "establish any significant limitation on [her] ability to perform simple, routine tasks." Tr. 20. The ALJ discounted Plaintiff's claim that she was easily distracted, citing the contrary clinical

findings, her ability to graduate high school and obtain a learners' permit, and her daily activities. Tr. 20. The ALJ found Dr. Santarpia's opinion "partially persuasive." Tr. 25. He largely adopted it, except that he concluded that Plaintiff's learning disability was severe and that she was limited to simple work and decision-making. *Id.* The ALJ found Dr. Juriga's opinion inconsistent with subsequently obtained evidence and discounted Griffing's opinion entirely. Tr. 25-26. Ultimately, the ALJ found that Plaintiff was able to perform a full range of work at all exertional levels, except that she was limited to simple, routine, and repetitive tasks and simple work-related decisions. Tr. 22.

Plaintiff challenges the RFC on the basis that, having rejected most of the opinion evidence, the ALJ must have relied on his own lay judgment to interpret the "raw medical data" and fashion the RFC. ECF No. 8-1 at 8. In Plaintiff's view, the ALJ's analysis was particularly erroneous because he attempted to rely on his lay judgment to assess Plaintiff's mental impairment, which by its nature is not susceptible to "common sense judgment[]." *Id.* at 13.

Although the Court agrees with many of the background principles on which Plaintiff relies to challenge the ALJ's decision, the Court is not persuaded that the ALJ erred under the facts of this case.

"Specific limitations included in an RFC, like the RFC as a whole, must be based on evidence in the record, not on an ALJ's own surmise." *MaryAnne V. v. Comm'r of Soc. Sec.*, No. 20-CV-412, 2021 WL 3560584, at *2 (W.D.N.Y. Aug. 12, 2021) (internal quotation marks omitted). The evidentiary basis for a particular limitation can come from a variety of sources. "A medical opinion, a claimant's testimony, or information contained in the medical records can oftentimes be sufficient to support a given [restriction]." *Id.* The ALJ is "free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional

7

capacities and limitations"; he need not limit the RFC only to those "limitations explicitly identified in the record." *Id.* On appeal, a court must "must defer to the ALJ's factfinding" unless "a reasonable factfinder would *have to conclude otherwise*." *Id.*

But the deference afforded to such factfinding "does not give an ALJ the license to arbitrarily craft functional limitations," *id.* at *3, for example, by "splitting the difference" between two opposed positions. *See, e.g.*, *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (where some evidence showed "total loss of function" to claimant's hand and other evidence showed no loss, the ALJ could not conclude that claimant had "fifty percent capacity"). Nor does the ALJ's authority to make factual findings permit the ALJ to "play doctor." *Nancy B. v. Comm'r of Soc. Sec.*, No. 19-CV-6574, 2021 WL 716705, at *3 (W.D.N.Y. Feb. 24, 2021). Because the ALJ is a layperson, his "ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of [a] layperson." *Id.* For this reason, the ALJ "may not interpret raw medical data in functional terms." *Id.*; *see also Kemp v. Comm'r of Soc. Sec.*, No. 19-CV-282, 2020 WL 5016684, at *3 (W.D.N.Y. Aug. 25, 2020) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.").

In this case, it cannot be said that the ALJ's RFC was manufactured from his own surmise and improper lay opinion. The record contains two medical opinions—those of Dr. Juriga and Dr. Santarpia—which indicated that Plaintiff had *no* functional limitations arising from her learning disability. *See* Tr. 99-100, 371. The RFC is largely consistent with those opinions, as the ALJ likewise found, with one exception, that Plaintiff had no functional limitations. Tr. 22. This is therefore not a case in which the ALJ rejects all of the medical opinions in the record and proceeds

to "interpret raw medical data that would require the expertise of a physician or other trained medical source." *Paul V. v. Comm'r of Soc. Sec.*, No. 20-CV-6887, 2022 WL 2114799, at *4 (W.D.N.Y. June 13, 2022) (internal quotation marks omitted).

The ALJ diverged from Dr. Juriga's and Dr. Santarpia's opinions only insofar as he limited Plaintiff to simple, routine, and repetitive tasks and simple work-related decisions. *See* Tr. 22. Contrary to Plaintiff's argument, the ALJ reasonably included this restriction in the RFC notwithstanding the absence of a corroborating medical opinion. To be sure, an ALJ may not ordinarily "make common sense judgments about mental health impairments." *Paul V.*, 2022 WL 2114799, at *4. This is because such impairments are "by their very nature highly complex and individualized," which makes it all the more inappropriate for the ALJ to rely on his "own lay interpretation" of the clinical findings and/or medical data. *Maxwell H. v. Comm'r of Soc. Sec.*, No. 19-CV-148, 2020 WL 1187610, at *7 (N.D.N.Y. Mar. 12, 2020). Nevertheless, even where psychiatric impairments are at issue, the ALJ remains free to draw reasonable, "common-sense inferences from the record, like any layperson, to arrive at his specific findings." *Paul V.*, 2022 WL 2114799, at *4.

In this case, the record contained sufficient nonmedical evidence from which the ALJ could reasonably conclude that Plaintiff should be limited to "simple, routine tasks." Tr. 20. Plaintiff's educational records provided relevant insight into the functional limitations associated with her learning disability. *Cf.* S.S.R. 11-2p, 2011 WL 4055665, at *5 (Sept. 12, 2011) (noting that "[e]vidence from school programs . . . can help [the ALJ] evaluate the severity and impact of a young adult's impairment(s)"). As the ALJ found, these records showed some level of impairment in terms of cognitive functioning, *see* Tr. 19, 25, but they did not suggest that Plaintiff struggled to understand or perform simple, repetitive tasks. Tr. 24. Rather, Plaintiff struggled when faced

with complex tasks, information, or instructions. Tr. 221, 222; *see also* Tr. 25 ("[D]ue to the learning disorder and consistent with her overall cognitive functioning, the conclusion that [Plaintiff] would still be able to understand, remember, and apply complex directions and to maintain attention and concentration to perform those complex tasks is not reasonable."). From this evidence, the ALJ was permitted to draw the inference that Plaintiff's learning disability limited her to simple work.

This conclusion is further supported by Plaintiff's hearing testimony. At the hearings, Plaintiff explained that, because she struggled to learn new tasks, she would have difficulty in a work environment: she would become stressed and emotional to the point where she would "break down" and be unable to perform the work and appropriately interact with supervisors and co-workers. Tr. 44-45; *see also* Tr. 45-46 ("I would just break down 'cause I wouldn't know what to do like what other people could do. And I get nervous."); Tr. 47 (explaining that she had mood swings when she "get[s] frustrated 'cause I can't do what other people can do"). The ALJ could reasonably infer from Plaintiff's testimony that these deleterious effects could be avoided if Plaintiff worked in an environment in which she was not constantly faced with new or complicated instructions and tasks, but was instead limited to "simple, routine and repetitive tasks and simple work-related decisions." Tr. 22. Furthermore, Dr. Santarpia's interpretation of the cognitive test results, as well as Plaintiff's activities of daily living, support the conclusion that Plaintiff would be capable of performing simple tasks in a work setting. *See* Tr. 24, 59, 371.

Therefore, Plaintiff's argument is not a basis for remand.[3]

---

[3] To the extent Plaintiff also argues that the ALJ erroneously found her anxiety, depression, and attention-deficit hyperactivity disorders nonsevere, *see* ECF No. 8-1 at 12; Tr. 18, her mere citation to contrary record evidence is insufficient to warrant relief. *See Phillip D. v. Comm'r of Soc. Sec.*, No. 20-CV-6746, 2022 WL 2872646, at *3 (W.D.N.Y. July 21, 2022) ("Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position." (internal brackets omitted)).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED.  The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 24, 2023
      Rochester, New York

                                      _____
                                      HON. FRANK P. GERACI, JR.
                                      United States District Judge
                                      Western District of New York